UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETS
BOSTON DIVISION

| | | |
|---|---|---|
| **Siasconset Casino Association,** | X X | |
| *Plaintiff(s)* | X X | Case No. 1:25-cv-13099 |
| v. | X X | |
| **U.S. Citizenship and Immigration Services**; Kristi Noem, Secretary, Department of Homeland Security; Joseph B. Edlow, Director, U.S. Citizenship and Immigration Services; | X X X X X X | |
| *Defendant(s)* | X | |
| _____/ | | |

**COMPLAINT FOR RELIEF PURSUANT TO THE ADMINISTRATIVE PROCEDURES ACT AND THE DECLARATORY JUDGMENT ACT**

1

**COMPLAINT FOR RELIEF PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT AND THE DECLARATORY JUDGMENT ACT**

## I. INTRODUCTION

1. Plaintiff brings this action pursuant to the Administrative Procedures Act, 5 U.S.C. § 702, *et seq.* based on the unlawful, arbitrary, and capricious denial by U.S. Citizenship and Immigration Services ("USCIS") of Plaintiff's Form I-129, Petition for Non-Immigrant Worker P-1A classification ("Form I-129").

2. Louise Kwong ("Ms. Kwong"), is an internationally acclaimed professional tennis player and Canadian national who has been competing professionally for over a decade and was previously granted P-1A status. Siasconset Casino Association (dba Sconset Casino Tennis Club), is an American tennis club who trains and sponsors Ms. Kwong.

3. Siasconset Casino Association (Plaintiff) seeks review of the USCIS decision dated July 21, 2025 denying their Form I-129 petitioning Ms. Kwong. The petition sought to classify Ms. Kwong as an internationally recognized athletes under section 101(a)(15)(P)(i) of the Immigration and Nationality Act (INA) (hereinafter, the "INA") 8 U.S.C. § 1101(a)(15)(P)(i). This classification permits foreign athletes to enter the United States temporarily to participate in specific athletic competitions or events, either individually or as part of a team, at an internationally recognized level of performance.

4. The regulatory criteria for the P-1A classification are set forth at 8 C.F.R. § 214.2(p)(4)(ii), which require a U.S. petitioner and documentation that the athlete or team is internationally recognized, including evidence satisfying at least two of seven evidentiary categories.

5. By a preponderance of the evidence, Ms. Kwong satisfied at least 4 regulatory criteria as an internationally recognized athlete. USCIS did not dispute this evidence in its Request for Evidence or in the denial notice.

6. Ms. Kwong further demonstrated that she seeks to enter the United States to compete in tournaments that require internationally recognized athletes.

7. The Administrative Record contains extensive and credible evidence demonstrating, by a preponderance of the evidence, that Ms. Kwong is internationally recognized and that she competes in events that meet the regulatory definition of "competition." In fact, she has been previously approved by USCIS for this exact status, with no new substantive changes to her background or proposed itinerary.

8. Nevertheless, USCIS's denial a) mischaracterizes the nature of International Tennis Federation ("ITF") tournaments by dismissing them as insufficiently distinguished or internationally recognized; b) ignores probative evidence that ITF competitions are recognized worldwide as a structured pathway for professional athletes competing at a global level; c) inflates the evidentiary burden beyond the statutory "preponderance of the evidence" standard; and d) imposes an ultra vires requirement that only ATP or WTA "top-tier" events qualify, a requirement found nowhere in the INA, its implementing regulations, or the USCIS Policy Manual.

9. These actions constitute an abuse of discretion and a violation of the Administrative Procedure Act as well as a violation of Plaintiff' constitutional due process rights. For these reasons, the denial must be set aside as unlawful under 5 U.S.C. § 706(2)(A). Plaintiff respectfully requests that this Court vacate USCIS's decision and remand with instructions to re-adjudicate the petition in accordance with the law.

## II. PARTIES

10. Plaintiff Siasconset Casino Association ("Sconset") is a private tennis club located in Siasconset, Massachusetts. Founded in 1899, Sconset sponsors, trains, and supports professional and competitive tennis players, including Ms. Kwong. Sconset filed the Form I-129 petition on Ms. Kwong's behalf, seeking to classify her as a P-1A athlete so that she may lawfully compete and train in the United States under them. Sconset has a direct interest in this action because the denial of Ms. Kwong's petition prevents the club from employing, training, and showcasing an internationally recognized athlete in tournaments and competitions across the United States.

11. Defendant U.S. Citizenship and Immigration Services ("USCIS") is a federal agency within the U.S. Department of Homeland Security ("DHS"). USCIS is responsible for adjudicating immigration petitions and applications, including the Form I-129 petition at issue in this action.

12. Defendant Kristi Noem is the Secretary of DHS. In that capacity, she is charged with the administration and enforcement of the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. Secretary Noem is sued in her official capacity.

13. Defendant Joseph B. Edlow is the Director of USCIS. He oversees the agency's adjudication of petitions for immigration benefits, including the petition at issue here. Director Edlow is sued in his official capacity.

## III. BACKGROUND AND PROCEDURAL HISTORY

14. On November 8, 2024, Plaintiff filed a Form I-129 seeking to classify Ms. Kwong as a P-1A nonimmigrant athlete pursuant to INA § 101(a)(15)(P)(i); 8 U.S.C. § 1101(a)(15)(P)(i).

15. Ms. Kwong was previously granted P-1A nonimmigrant athlete status with identical credentials. The filing at issue in this case was submitted as a renewal request of Ms. Kwong's existing P-1A status.

16. The new petition was supported by a detailed itinerary of tournaments for the requested visa period, as well as extensive evidence demonstrating that the competitions in which Ms. Kwong would participate (including ITF and WTA-sanctioned tournaments) are internationally recognized, confer world ranking points, and form part of the global professional tennis tour. Plaintiff also submitted media coverage, expert letters, and other supporting documentation in accordance with 8 C.F.R. § 214.2(p)(4)(ii).

17. On April 22, 2025, USCIS issued a Request for Evidence questioning whether each individual ITF tournament listed in the itinerary constituted a distinguished competition at an internationally recognized level of performance.

18. In response to the Request for Evidence, Plaintiff submitted additional documentation and legal arguments demonstrating that the petition fully complied with regulatory requirements. Plaintiff explained that the detailed itinerary met the statutory standard by listing the names, dates, and locations of the tournaments. Plaintiff further argued that USCIS misapplied the law by treating each individual ITF tournament as the "competition," when the relevant "competition" is the professional season itself, analogous to how a football or soccer player's competition is the league season rather than each individual game. Plaintiff emphasized that ITF tournaments are integral to the structure of professional tennis because they award WTA ranking points, serve as primary qualifying events for premier tournaments such as the Grand Slams and Olympic Games, and carry significant prize money and media coverage. The record also

included expert opinion letters and evidence of distinguished reputation, underscoring that ITF competitions are internationally recognized and indispensable to the sport's infrastructure.

19. On July 21, 2025, USCIS denied the petition. In its decision, USCIS dismissed ITF tournaments as not meeting the definition of "internationally recognized competitions" and concluded that Ms. Kwong therefore failed to establish eligibility for P-1A classification.

20. USCIS's decision disregarded probative evidence, misapplied the definition of "competition" under 9 FAM 402.14-4 and 8 C.F.R. § 214.2(p)(4), and imposed an impermissibly heightened standard of proof. The denial also created an ultra vires requirement that only "top-tier" ATP or WTA tournaments qualify, a requirement found nowhere in the statute, regulations, or agency guidance.

21. This new ultra vires requirement has consequences beyond this case. ITF tournaments are critical to the infrastructure of professional tennis. They award international ranking points, provide the qualifying pathway to the sport's most prestigious events, and often take place in the United States. By categorically dismissing ITF competitions, USCIS not only bars athletes like Ms. Kwong from competing in the United States but also threatens to handicap the development and viability of the sport itself within the country.

## IV. JURISDICTION

22. This is a civil action against the United States arising under the INA, 8 U.S.C. § 1101, *et seq.* and the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.*

23. Original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331, as well as 28 U.S.C. § 1346(a)(2).

24. Jurisdiction is also conferred by 5 U.S.C. § 704. Plaintiff is aggrieved by adverse agency action in this case, as the Administrative Procedures Act requires to confer jurisdiction on the District Courts, 5 U.S.C. §§ 702 *et seq*.

25. The aid of this Court is invoked under 28 U.S.C. § 2201 and § 2202, authorizing a declaratory judgment.

26. Costs and attorney fees will be sought pursuant to the Equal Access to Justice Act. 5 U.S.C. § 504 and 28 U.S.C. § 2412(d), *et seq.*

## V.  VENUE

27. Venue is proper in the District of Massachusetts, Boston Division, pursuant to 28 U.S.C. § 1391(e), because Plaintiff is incorporated and operating in this judicial district and the defendants are agencies and officers of the United States sued in their official capacities.

## VI.  REMEDY SOUGHT

28. Plaintiff respectfully requests the following relief:

    (a) Vacatur and setting aside of the denial of the Form I-129 petition pursuant to 5 U.S.C. § 706(2);

    (b) Declaratory judgment that the denial is unlawful, arbitrary, capricious, and an abuse of discretion;

    (c) Preliminary and permanent injunctive relief and/or a writ of mandamus under 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling Defendants to approve the petition or, at a minimum, to conduct a new adjudication consistent with applicable law;

    (d) An award of attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412;

    (e) Such other and further relief as the Court deems just and proper.

## VII.   EXHAUSTION OF REMEDIES

29. There are no administrative remedies that Plaintiff is required to exhaust prior to bringing this instant action in federal court. *Darby v. Cisneros*, 509 U.S. 137, 145 (1993).

## VIII.   LEGAL FRAMEWORK

30. The Immigration and Nationality Act ("INA") authorizes the admission of certain nonimmigrant athletes under section 101(a)(15)(P)(i) of the INA, 8 U.S.C. § 1101(a)(15)(P)(i). The P-1A classification is reserved for foreign nationals "coming to the United States to perform at a specific athletic competition as an athlete, individually or as part of a group or team, at an internationally recognized level of performance."

31. The implementing regulations at 8 C.F.R. § 214.2(p)(4)(ii)(A) provide that an athlete is "internationally recognized" if they possess "a high level of achievement in a sport, evidenced by a degree of skill and recognition substantially above that ordinarily encountered, to the extent that such achievement is renowned, leading, or well-known in more than one country."

32. A U.S. petitioner must submit evidence demonstrating that the athlete is internationally recognized, including documentation that satisfies at least two of the evidentiary criteria at 8 C.F.R. § 214.2(p)(4)(ii)(B), including:

    a) Evidence of having participated to a significant extent in a prior season with a major United States sports league;

b) Evidence of having participated in international competition with a national team;

c) Evidence of having participated to a significant extent in a prior season for a U.S. college or university in intercollegiate competition;

d) A written statement from an official of the governing body of the sport which details how you or your team is internationally recognized;

e) A written statement from a member of the sports media or a recognized expert in the sport which details how you or your team is internationally recognized;

f) Evidence that you or your team is ranked, if the sport has international rankings; or

g) Evidence that you or your team has received a significant honor or award in the sport.

31. The regulations also define "competition, event, or performance" broadly. See 9 FAM 402.14-4 (incorporating DHS interpretation). Such activity may include "an athletic competition or season, tournament, tour, exhibit, project, or entertainment event or engagement," and for a P-1 athlete, the "event may be the duration of the alien's contract."

32. A petitioner must establish eligibility by a preponderance of the evidence. This standard requires that, even if some doubt remains, if the petitioner submits relevant, probative, and credible evidence that would lead a reasonable adjudicator to conclude the claim is "probably true" or "more likely than not," then the standard is met. See *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).

33. The applicable standard is not the "clear and convincing" evidence standard, which demands proof that a claim is substantially more likely than not or has a very high probability of truth. USCIS has no authority to apply this heightened burden in P-1A cases. Courts and agency precedent have made clear that immigration benefit adjudications must be decided under the

preponderance of the evidence standard, and the agency acts unlawfully if it demands more. See *Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO 2010).

34. The Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), requires reviewing courts to "hold unlawful and set aside agency action" that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. An agency acts arbitrarily and capriciously when it ignores relevant evidence, misstates or mischaracterizes the record, applies an incorrect legal standard, or imposes requirements not contained in statute or regulation.

35. Courts have recognized that USCIS may not inflate the evidentiary burden beyond the "preponderance of the evidence" standard applicable to immigration benefit adjudications. See *Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO 2010).

### IX. CAUSE OF ACTION

36. On November 8, 2024, Plaintiff Sconset Casino Tennis Club, on behalf of Ms. Louise Kwong, filed a Form I-129 seeking to extend Ms. Kwong's classification as a P-1A nonimmigrant athlete pursuant to INA § 101(a)(15)(P)(i)(a), 8 U.S.C. § 1101(a)(15)(P)(i)(a).

37. On April 22, 2025, USCIS issued a Request for Evidence questioning whether the ITF-sanctioned tournaments in Ms. Kwong's itinerary qualified as "competitions at an internationally recognized level of performance," demanding that the petitioner prove that each individual ITF tournament requires the participation of athletes who are already internationally recognized.

38. Plaintiff timely responded with clarifications, legal arguments, and additional evidence. Plaintiff explained that the governing materials recognize "competition, event, or performance" to include an entire athletic season or tour, not merely each qualifying match or local tournament in isolation, and that ITF tournaments confer WTA ranking points and not

10

only sanction but serve as integral qualifiers for the WTA Tour, the Grand Slam tournaments, and the Olympic Games. See 9 FAM 402.14-4.

39. On July 21, 2025, USCIS denied the Form I-129. In doing so, the agency did not dispute Plaintiff' evidence of Ms. Kwong's international recognition under 8 C.F.R. § 214.2(p)(4)(ii) but denied on the ground that tournaments in the Ms. Kwong's itinerary did not "require the participation of internationally recognized athletes."

40. USCIS' denial is legally defective. The decision misapplies the statutory and regulatory framework, ignores and mischaracterizes probative evidence, unlawfully elevates the burden of proof beyond the preponderance-of-the-evidence standard, and most critically, rests on an ultra vires interpretation that has no basis in the INA or the regulations.

41. The INA requires only that the athlete "performs as an athlete … at an internationally recognized level of performance," and then that the alien "seeks to enter the United States temporarily and solely for the purpose of performing as such an athlete with respect to a specific athletic competition." 8 U.S.C. § 1184(c)(4)(A)(i)(I), (ii)(I). For individual athletes, the law does not specifically say that the competition itself must "require" international recognition, but it does require that the athlete's performance be at an "internationally recognized level." This is a key distinction.

42. The regulations confirm that a "competition, event, or performance" can be an athletic season or tour, not each match in isolation. 8 C.F.R. § 214.2(p)(3). USCIS' per-event test rewrites the statute, contradicts the regulation, and would yield absurd results (e.g., disqualifying a top-league player for a scrimmage or a Grand-Slam-caliber tennis pro for a qualifying draw).

43. Courts have rejected USCIS's attempts to graft extra-regulatory requirements onto athlete-ability adjudications. See Kazarian v. USCIS, 596 F.3d 1115, 1121–22 (9th Cir. 2010) (USCIS "erred in unilaterally imposing novel substantive or evidentiary requirements beyond those set forth" in the regulations). The same principle applies here: the agency may not convert one optional evidentiary prong into a mandatory baseline for every competition.

44. USCIS' interpretation threatens to handicap the structure of professional tennis. ITF tournaments, often hosted in the United States, are foundational to the sport's ecosystem. They award ranking points and serve as the qualifying pathway to the most prestigious tournaments as well as sanction the highest level events in the sport, including Wimbledon, the U.S. Open, the Olympics, and other top caliber global tournaments. Categorically excluding ITF events from the definition of "competitions at an internationally recognized level of performance" would prevent internationally recognized athletes from advancing to the very events Congress intended the P-1A to cover.

45. By inventing a requirement not found in the statute or regulations, USCIS acted contrary to law and in excess of its statutory authority, in violation of the Administrative Procedure Act. See 5 U.S.C. § 706(2)(A), (C). See also Matter of Chawathe, 25 I. & N. Dec. 369, 375 (AAO 2010) (preponderance-of-the-evidence standard; agency may not heighten the burden).

46. USCIS's interpretation is not entitled to deference. The Supreme Court has directed courts to exercise independent judgment on statutory meaning and not to defer to agency views that add requirements Congress did not enact. See Loper Bright Enters. v. Raimondo, No. 22-451, slip op. at __ (U.S. June 28, 2024). At most, the agency's position would merit Skidmore weight, which it does not earn. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

47. Alternatively, even if 8 C.F.R. § 214.2(p)(4)(ii)(B)(2) could be read to speak to individual competitions in some contexts, USCIS's reading here is still unlawful. Declaring ITF-sanctioned tournaments, which are central to Grand Slam qualification and grant WTA ranking points, categorically non-qualifying is neither reasonable nor consistent with the rule's text or the sport's settled structure, and it creates unfair surprise. This was surely not the congressional intent.

48. In any event, the record here showed, above and beyond what the statute requires, that ITF-sanctioned tournaments are internationally recognized, confer world ranking points, and routinely include internationally recognized players. But the main legal point remains: for individual athletes, the INA places the "internationally recognized level of performance" requirement on the athlete, and then asks whether the athlete seeks entry to perform "as such an athlete" in a specific competition, season, or tour. 8 U.S.C. § 1184(c)(4)(A)(i)(I), (ii)(I). USCIS may not transform that athlete-focused standard into a per-tournament veto.

49. Deference to an agency's interpretation of its own regulation applies only if the regulation is genuinely ambiguous, the interpretation is reasonable, authoritative, and consistent, and it does not create unfair surprise. See Kisor v. Wilkie, 139 S. Ct. 2400, 2415–18 (2019).

50. USCIS also failed to consider important aspects of the problem, including record evidence that "competition" in this context encompasses a season or tour and that ITF events are internationally recognized and integral to professional progression. Agency action that ignores relevant factors or fails to articulate a rational connection between the facts found and the choice made is arbitrary and capricious. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

51.  For all these reasons, Defendants' denial is arbitrary, capricious, an abuse of discretion, and not in accordance with law, and must be set aside under 5 U.S.C. § 706(2). Plaintiff respectfully requests vacatur of the denial and remand for a new adjudication consistent with the statute, the regulations as written, and the proper preponderance-of-the-evidence standard.

## X.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Accept jurisdiction and maintain continuing jurisdiction of this action;
2. Declare the USCIS decision denying Ms. Kwong's Form I-129 petition unlawful, arbitrary, capricious, and an abuse of discretion, and set it aside;
3. Remand this matter to USCIS with instructions to approve Ms. Kwong's Form I-129 petition;
4. Issue a preliminary and permanent injunction pursuant to 28 U.S.C. §1361 and 5 U.S.C. §706(1) compelling Defendants to approve individual Plaintiff's Form I-129.
5. Award Plaintiff attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;
6. Grant such other and further relief as the Court deems just and proper.

Dated:  October 22, 2025

/s/ Dan Berger

Green & Spiegel
1524 Delancey Street
4th Floor
Philadelphia PA 19102 US
Phone: (215)395-8959
Email: dberger@gands-us.com

*Counsel for Plaintiff*

/s/ Nadine Navarro

Navarro Immigration Law Firm
2332 Galiano Street, 2nd Floor
Coral Gables, FL 33134
Phone: (786)734-1671
Email: nadine@navarroimmigration.com

*Pro Hac Counsel for Plaintiff*

*\*Pro Hac Vice application to be forthcoming*