**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSSETS**
**BOSTON DIVISION**

| | | |
|---|---|---|
| **Siasconset Casino Association,** | X X | |
| *Plaintiff(s)* | X | Case No. 1:25-cv-13099 |
| | X | |
| v. | X | |
| | X | |
| **U.S. Citizenship and Immigration** | X | |
| **Services**; Kristi Noem, Secretary, Department | X | |
| of Homeland Security; Joseph B. Edlow, | X | |
| Director, U.S. Citizenship and Immigration | X | |
| Services; | X | |
| | X | |
| *Defendant(s)* | X | |
| _____/ | | |

**FIRST AMENDED COMPLAINT FOR RELIEF PURSUANT TO THE**
**ADMINISTRATIVE PROCEDURE ACT AND THE DECLARATORY JUDGMENT ACT**

### I. INTRODUCTION

1. Plaintiff brings this First Amended Complaint pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, et seq., based on the unlawful, arbitrary, and capricious denial by U.S. Citizenship and Immigration Services ("USCIS") of Plaintiff's Form I-129, Petition for Non-Immigrant Worker seeking P-1A classification ("Form I-129"). This First Amended Complaint supersedes the original Complaint filed on October 22, 2025, and incorporates the full procedural history of the agency's adjudication, including USCIS's reopening of the case, issuance of a Notice of Intent to Deny ("NOID"), receipt of Plaintiff's NOID response, and the agency's second and final denial dated March 4, 2026.

2. Louise Kwong ("Ms. Kwong") is an internationally recognized professional tennis player and Canadian national who has been competing professionally for over a decade and was previously granted P-1A status by USCIS. Siasconset Casino Association (d/b/a Sconset Casino Tennis Club) is an American tennis club that trains and sponsors Ms. Kwong.

3. Plaintiff seeks review of the USCIS decision dated March 4, 2026, denying the Form I-129 petition filed on behalf of Ms. Kwong. The petition sought to classify Ms. Kwong as an internationally recognized athlete under section 101(a)(15)(P)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(P)(i). This classification permits foreign athletes to enter the United States temporarily, for up to 5 years at a time, to participate in specific athletic competitions or events, individually or as part of a team, at an internationally recognized level of performance.

4. The regulatory criteria for P-1A classification are set forth at 8 C.F.R. § 214.2(p)(4)(ii), which requires a U.S. petitioner and documentation that the athlete or team is internationally recognized, including evidence satisfying at least two of seven evidentiary categories.

5. By a preponderance of the evidence, Ms. Kwong satisfied at least four regulatory criteria as an internationally recognized athlete. USCIS did not dispute this evidence in the Request for Evidence, the Notice of Intent to Deny, or either denial notice. Indeed, in the March 4, 2026 denial, USCIS expressly acknowledged that Ms. Kwong is an internationally recognized athlete.

6. Ms. Kwong further demonstrated that she seeks to enter the United States to compete in tournaments operated by the International Tennis Federation ("ITF"), the governing body of world tennis recognized by the International Olympic Committee, that require the participation of internationally recognized athletes.

7. Nevertheless, USCIS's denial: *(a)* mischaracterizes the nature of ITF tournaments by dismissing them as insufficiently distinguished or internationally recognized; *(b)* ignores probative evidence that ITF competitions are recognized worldwide as a structured pathway for professional athletes competing at a global level; *(c)* inflates the evidentiary burden beyond the statutory "preponderance of the evidence" standard; *(d)* imposes an ultra vires requirement that only WTA or Grand Slam "top-tier" events qualify, a requirement found nowhere in the INA, its implementing regulations, or the USCIS Policy Manual; *(e)* concedes Ms. Kwong's international recognition as an athlete yet denies the petition on the basis that the competitions themselves do not "require" internationally recognized athletes, a contradictory and logically incoherent position; and *(f)* penalizes Ms. Kwong for a competition gap that was directly caused by USCIS's own adjudicatory delay of Ms. Kwong.

8. These actions constitute an abuse of discretion and violations of the APA. The denial must be set aside as unlawful under 5 U.S.C. § 706(2)(A). Plaintiff respectfully requests that this Court vacate USCIS's decision and remand with instructions to approve the petition.

## II. PARTIES

9. Plaintiff Siasconset Casino Association ("Sconset") is a private tennis club located in Siasconset, Massachusetts. Founded in 1899, Sconset sponsors, trains, and supports professional and competitive tennis players, including Ms. Kwong. Sconset filed the Form I-129 petition on Ms. Kwong's behalf, seeking to classify her as a P-1A athlete so that she may lawfully compete and train in the United States. Sconset has a direct interest in this action because the denial of Ms. Kwong's petition prevents the club from employing and showcasing an internationally recognized athlete in tournaments and competitions across the United States.

10. Defendant U.S. Citizenship and Immigration Services ("USCIS") is a federal agency within the U.S. Department of Homeland Security ("DHS"). USCIS is responsible for adjudicating immigration petitions and applications, including the Form I-129 petition at issue in this action.

11. Defendant Markwayne Mullin (previously Kristi Noem) is the Secretary of DHS. In that capacity, he is charged with the administration and enforcement of the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. Secretary Mullin is sued in his official capacity.

12. Defendant Joseph B. Edlow is the Director of USCIS. He oversees the agency's adjudication of petitions for immigration benefits, including the petition at issue here. Director Edlow is sued in his official capacity.

## III. BACKGROUND AND PROCEDURAL HISTORY
### A. Original Filing and First Denial

13. On November 8, 2024, Plaintiff filed a Form I-129 seeking to classify Ms. Kwong as a P-1A nonimmigrant athlete pursuant to INA § 101(a)(15)(P)(i), 8 U.S.C. § 1101(a)(15)(P)(i).

14. Ms. Kwong was previously granted P-1A nonimmigrant athlete status with identical credentials. The filing at issue in this case was submitted as a petition to extend Ms. Kwong's stay on P-1A status due to continuing employment as a professional tennis player..

15. The petition was supported by a detailed itinerary of tournaments for the requested visa period, extensive evidence demonstrating that the competitions in which Ms. Kwong would participate (including ITF and WTA-sanctioned tournaments) are internationally recognized, confer world ranking points, and form part of the global professional tennis tour. Plaintiff also submitted media coverage, expert letters, and other supporting documentation in accordance with 8 C.F.R. § 214.2(p)(4)(ii).

16. On April 18, 2025, USCIS issued a Request for Evidence ("RFE") questioning whether each individual ITF tournament listed in the itinerary constituted a distinguished competition at an internationally recognized level of performance.

17. In response to the RFE, Plaintiff submitted additional documentation and legal arguments demonstrating that the petition fully complied with regulatory requirements. Plaintiff explained that the governing materials recognize "competition, event, or performance" to include an entire athletic season or tour, not merely each qualifying match or local tournament in isolation, and that ITF tournaments confer WTA ranking points and serve as integral qualifiers for the WTA Tour, the Grand Slam tournaments, and the Olympic Games.

18. On July 21, 2025, USCIS denied the petition. In its decision, USCIS dismissed International Tennis Federation tournaments as not meeting the definition of "internationally recognized competitions" and concluded that Ms. Kwong therefore failed to establish eligibility for P-1A classification. USCIS did not dispute Ms. Kwong's international recognition as an athlete.

### B. Original Complaint and USCIS Case Reopening

19. On October 22, 2025, Plaintiff filed the original Complaint in this action challenging the July 21, 2025 denial as arbitrary, capricious, and contrary to law under the APA.

20. On December 19, 2025, USCIS reopened the adjudication of the Form I-129 petition. Upon reopening, USCIS immediately issued a Notice of Intent to Deny ("NOID") dated December 24, 2025.

21. The federal litigation was administratively closed but not dismissed, permitting Plaintiff to file this First Amended Complaint following the second USCIS denial of it's I-129 petition on March 4, 2026.

22. The December 24, 2025 NOID largely repeated the same grounds raised in the July 2025 denial and the prior RFE. USCIS again questioned whether ITF Women's World Tennis Tour competitions qualify as events at an internationally recognized level of performance that require the participation of internationally recognized athletes.

23. On January 26, 2026, Plaintiff submitted a comprehensive response to the NOID. Plaintiff's response addressed each of the Service's stated grounds for intended denial, including: (1) that the ITF Women's World Tennis Tour constitutes internationally recognized competition operated by the sport's global governing body; (2) that the regulations do not require competitions to be at the highest tier of a sport; (3) that prize money is legally irrelevant to determining distinguished reputation; (4) that expert support letters properly establish ITF tournament requirements; (5) that competition gaps are normal and expected in professional tennis; and (6) that no material error warranted withholding deference to the prior approval.

24. Plaintiff's NOID response provided extensive legal analysis distinguishing the statutory text, which places the "internationally recognized level of performance" requirement on the athlete, not on the competition.

### C. Second Denial – March 4, 2026

25. On March 4, 2026, USCIS issued a second denial of the Form I-129 petition. The March 4, 2026 denial is the final agency action at issue in this First Amended Complaint.

26. Critically, the March 2026 denial expressly acknowledged that Ms. Kwong is an internationally recognized athlete. USCIS stated: "USCIS has not found that the beneficiary ceased to be internationally recognized.'" USCIS further acknowledged that "the issue of

whether the beneficiary is an internationally recognized athlete, which USCIS does not dispute, is distinct from the issue of whether she will be competing in the United States at an internationally recognized level of performance."

27. Despite this concession, USCIS denied the petition on the sole remaining ground that the International Tennis Federation(ITF) Women's World Tennis Tour competitions in Ms. Kwong's itinerary do not constitute events at an internationally recognized level of performance that "require" the participation of internationally recognized athletes.

28. In reaching this conclusion, USCIS: (a) dismissed the ITF Women's World Tennis Tour as "entry-level and mid-level professional tournaments" based on language from the ITF's website, while ignoring that even entry-level professional competitions in tennis are operated by the sport's international governing body and sanctioned across 65+ countries, open to players who meet established competitive thresholds; (b) dismissed multiple expert testimonial letters from professionals in the field of tennis on the basis of perceived "inconsistencies" between those letters and the ITF's own description of its tour, despite the fact that the letters addressed competitive requirements while the ITF description addressed hierarchical positioning - two different aspects that can be simultaneously true; (c) emphasized that Ms. Kwong won a $15,000 doubles prize at the lowest tournament tier, treating prize money as a proxy for distinguished reputation despite there being no regulatory basis for a minimum prize threshold; (d) noted that Ms. Kwong has never competed in WTA or Grand Slam main draws, applying an impermissible requirement that P-1A athletes compete at the absolute pinnacle of their sport; and (e) argued that the beneficiary's competition gap and B-1 tourist visa entries demonstrate she could have competed without P-1A status, improperly penalizing her for a gap in employment caused by USCIS's own adjudicatory delay, leaving the athlete guessing and waiting before concluding her employment authorized under P-1A.

29. The March 2026 denial also refused to accord deference to USCIS's prior approval of Ms. Kwong's P-1A petition, finding that the prior approval constituted "material error" and that "new material information" adversely impacted the beneficiary's eligibility. However, USCIS identified no actual factual error in the prior approval; it merely stated that the current adjudicator would reach a different conclusion. This is a change in adjudicative interpretation,

not the correction of a factual error, and does not warrant withholding deference under USCIS policy.

## IV. JURISDICTION

30. This is a civil action against the United States arising under the INA, 8 U.S.C. § 1101, et seq. and the Administrative Procedure Act, 5 U.S.C. § 701, et seq.

31. Original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331, as well as 28 U.S.C. § 1346(a)(2).

32. Jurisdiction is also conferred by 5 U.S.C. § 704. Plaintiff is aggrieved by adverse agency action in this case, as the APA requires to confer jurisdiction on the District Courts, 5 U.S.C. §§ 702 et seq.

33. The aid of this Court is invoked under 28 U.S.C. § 2201 and § 2202, authorizing a declaratory judgment.

34. Costs and attorney fees will be sought pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(d), et seq.

## V. VENUE

35. Venue is proper in the District of Massachusetts, Boston Division, pursuant to 28 U.S.C. § 1391(e), because Plaintiff is incorporated and operating in this judicial district and the defendants are agencies and officers of the United States sued in their official capacities.

## VI. EXHAUSTION OF REMEDIES

36. There are no administrative remedies that Plaintiff is required to exhaust prior to bringing this action in federal court. Darby v. Cisneros, 509 U.S. 137, 145 (1993).

## VII. LEGAL FRAMEWORK

37. The INA authorizes the admission of certain nonimmigrant athletes under section 101(a)(15)(P)(i) of the INA, 8 U.S.C. § 1101(a)(15)(P)(i). The P-1A classification is reserved for foreign nationals "coming to the United States to perform at a specific athletic competition as an athlete, individually or as part of a group or team, at an internationally recognized level of performance."

38. The implementing regulations at 8 C.F.R. § 214.2(p)(4)(ii)(A) provide that an athlete is "internationally recognized" if they possess "a high level of achievement in a sport, evidenced by a degree of skill and recognition substantially above that ordinarily encountered, to the extent that such achievement is renowned, leading, or well-known in more than one country."

39. A U.S. petitioner must submit evidence demonstrating that the athlete is internationally recognized, including documentation that satisfies at least two of the evidentiary criteria at 8 C.F.R. § 214.2(p)(4)(ii)(B), including: evidence of having participated to a significant extent in a prior season with a major United States sports league; evidence of having participated in international competition with a national team; evidence of participation for a U.S. college or university; a written statement from an official of the governing body of the sport; a written statement from sports media or a recognized expert; evidence of international ranking; or evidence of a significant honor or award in the sport.

40. The regulations define "competition, event, or performance" broadly. 8 C.F.R. § 214.2(p)(3) provides that such activity may include "an athletic competition, athletic season, tournament, tour, exhibit, project, entertainment event, or engagement." An athletic competition or entertainment event "could include an entire season of performances." See also 9 FAM 402.14-4 (incorporating DHS interpretation).

41. A petitioner must establish eligibility by a preponderance of the evidence. This standard requires that, even if some doubt remains, if the petitioner submits relevant, probative, and credible evidence that would lead a reasonable adjudicator to conclude the claim is "probably true" or "more likely than not," then the standard is met. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987); Matter of Chawathe, 25 I&N Dec. 369, 375 (AAO 2010).

42. The APA, 5 U.S.C. § 706(2), requires reviewing courts to "hold unlawful and set aside agency action" that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. An agency acts arbitrarily and capriciously when it ignores relevant evidence, misstates or mischaracterizes the record, applies an incorrect legal standard, or imposes requirements not contained in statute or regulation. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

43. Following the Supreme Court's decision in Loper Bright Enters. v. Raimondo, 144 S. Ct. 2244 (2024), courts exercise independent judgment on questions of statutory interpretation and may not defer to agency views that add requirements Congress did not enact. USCIS's interpretation is therefore subject to de novo judicial review. To the extent any deference applies, it would be the limited Skidmore framework, which the agency's interpretation does not satisfy. Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

## VIII. CAUSES OF ACTION

### COUNT I: Ultra Vires Agency Action
### Imposition of Requirements Not Found in Statute or Regulation

44. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

45. The INA requires only that the athlete "performs as an athlete … at an internationally recognized level of performance," and then that the athlete "seeks to enter the United States temporarily and solely for the purpose of performing as such an athlete with respect to a specific athletic competition." 8 U.S.C. § 1184(c)(4)(A)(i)(I), (ii)(I). For individual athletes, the statute places the "internationally recognized level of performance" requirement on the athlete, not on the competition itself.

46. USCIS's denial rests on a per-tournament veto that converts one optional evidentiary consideration into a mandatory, standalone disqualifier. The agency demands that each individual tournament "require" internationally recognized athletes as a condition of P-1A eligibility. This requirement appears nowhere in the statute, the regulations, or the USCIS Policy Manual.

47. The regulations at 8 C.F.R. § 214.2(p)(3) confirm that a "competition, event, or performance" can encompass an athletic season or tour, not each individual match in isolation. USCIS's per-event test rewrites the statute, contradicts the regulation, and yields absurd results - for example, disqualifying a top-league player for participating in a preseason scrimmage, or a Grand Slam-caliber tennis professional for competing in a qualifying draw.

48. Courts have rejected USCIS's attempts to graft extra-regulatory requirements onto athlete-ability adjudications. See Kazarian v. USCIS, 596 F.3d 1115, 1121–22 (9th Cir. 2010) (holding that USCIS "erred in unilaterally imposing novel substantive or evidentiary requirements beyond those set forth" in the regulations).

49. USCIS's interpretation categorically excludes ITF tournaments from P-1A eligibility. This has consequences beyond this case. ITF tournaments are critical to the infrastructure of professional tennis. They award international ranking points, provide the qualifying pathway to the WTA and the sport's most prestigious events including the Grand Slams and the Olympic Games, and are frequently held in the United States. By categorically dismissing ITF competitions, USCIS not only bars athletes like Ms. Kwong from competing in the United States but also threatens the development and viability of the sport within the country.

50. USCIS acted contrary to law and in excess of its statutory authority in violation of the APA, 5 U.S.C. § 706(2)(A), (C). See also Matter of Chawathe, 25 I&N Dec. 369, 375 (AAO 2010).

## COUNT II:

### Arbitrary and Capricious Agency Action – Failure to Engage with the Record

51. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

52. USCIS's March 2026 denial is internally contradictory. The agency conceded that Ms. Kwong is an internationally recognized athlete, yet denied the petition on the ground that the competitions in her itinerary do not "require" internationally recognized athletes. USCIS thereby acknowledged that an internationally recognized athlete will be competing in these very competitions, among other internationally recognized athletes of her level, yet simultaneously concluded they are not at an internationally recognized level. This reasoning is logically incoherent and fails the basic rationality requirement of arbitrary-and-capricious review.

53. USCIS failed to meaningfully engage with the legal arguments raised in Plaintiff's NOID response. Among others, the agency did not address: (a) the regulatory definition of "competition" at 8 C.F.R. § 214.2(p)(3) encompassing an athletic season or tour; (b) the distinction between requiring participation "from" internationally recognized athletes versus requiring participation "solely" from such athletes; (c) the analogy to minor league baseball, which USCIS has consistently recognized as qualifying for P-1A classification despite not being the "major leagues"; and (d) the argument that prize money has no regulatory basis as a measure of distinguished reputation.

54. USCIS improperly dismissed expert testimonial letters by manufacturing "inconsistencies" between the experts' statements about competitive requirements and the ITF's hierarchical description of its tour. As Plaintiff explained in the NOID response, these descriptions address different aspects of the same tour: the ITF's statement describes the tour's position within the professional tennis hierarchy, while the expert letters address the competitive demands placed on participants. Both can be simultaneously true. The Service cannot substitute its own lay interpretation of tennis competition structure for the expert opinions.

55. USCIS's reliance on prize money as a proxy for distinguished reputation is legally unfounded. The regulations at 8 C.F.R. § 214.2(p)(4)(ii) establish no minimum prize money threshold. Many sporting events considered universally to be internationally recognized, including the Olympic Games, Davis Cup, Fed Cup, and certain Pan American Games events, offer zero prize money. Under USCIS's logic, only Grand Slam competitors would qualify for P-1A classification, which conflates P-1A standards with the much more demanding EB-1A extraordinary ability standard and would exclude the vast majority of professional tennis players.

56. USCIS also mischaracterized the record regarding Ms. Kwong's competition gap and B-1 visa entries. The agency argued that Ms. Kwong's B-1 entries demonstrate she could have competed without P-1A status, and that the competition gap therefore cannot be attributed to USCIS delay. However, B-1 status does not authorize employment or competition for prize money in the manner contemplated by the P-1A visa. More fundamentally, the agency created a catch-22: it denied the P-1A petition partly because of the competition gap, yet the gap was

caused by the agency's own delay in adjudicating the petition. This circular reasoning is the hallmark of arbitrary and capricious action.

57. USCIS failed to consider important aspects of the problem, including record evidence that "competition" in this context encompasses a season or tour, that ITF events are internationally recognized and integral to professional progression, and that the competition gap was agency-caused. Agency action that ignores relevant factors or fails to articulate a rational connection between the facts found and the choice made is arbitrary and capricious. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

## COUNT III: Arbitrary and Capricious Agency Action
### Failure to Accord Deference to Prior Approval

58. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

59. USCIS policy provides that when adjudicating a subsequent petition involving the same parties and the same underlying facts, USCIS will generally defer to its prior determination of eligibility. USCIS will not defer to prior approvals only where: (1) there was a material error; (2) there has been a material change in circumstances or eligibility requirements; or (3) there is new material information that adversely impacts eligibility.

60. USCIS's refusal to accord deference here is legally erroneous. The agency identified no actual factual error in the prior approval. Instead, USCIS stated that the prior approval "appears to have been a material error" because the current adjudicator, applying a different interpretation of the regulations, would reach a different conclusion. A change in adjudicative interpretation is not the correction of a factual error, and does not warrant withholding deference.

61. The prior adjudicator reviewed the same type of evidence regarding the same type of competitions (USTA Pro Tennis and ITF tournaments) and determined they satisfied the regulatory requirements. The Service cannot retroactively declare this determination to be "error" simply because a different adjudicator would reach a different conclusion.

62. USCIS's characterization of Ms. Kwong's competition gap and current ranking status as "new material information" is equally flawed. Temporary ranking fluctuations and competition gaps are routine facts about an ongoing athletic career.

63. USCIS's refusal to accord deference effectively requires petitioners to re-litigate eligibility from scratch with each petition, contrary to the efficiency and consistency goals underlying the deference policy and violating principles of administrative regularity.

## COUNT IV:

### Violation of the Preponderance of the Evidence Standard

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. The applicable standard for P-1A adjudications is the preponderance of the evidence. Matter of Chawathe, 25 I&N Dec. 369, 375 (AAO 2010).

66. Despite this standard, USCIS's denial effectively demanded clear and convincing evidence (or even certainty) on multiple points. The agency: (a) required each individual ITF tournament to independently demonstrate it is at an "internationally recognized level," rather than evaluating the totality of the evidence regarding the tour as a whole; (b) dismissed expert letters that attested to the international character of ITF competitions based on minor perceived inconsistencies with ITF's own marketing materials, rather than considering them as probative evidence in the totality of the record; and (c) required the beneficiary to prove with certainty that she will compete in WTA and Grand Slam events, when the regulations only require a specific itinerary of planned competition.

67. The record contained substantial evidence, including expert letters, organizational documents, ranking data, competitive results, and prior approval, that would lead a reasonable adjudicator to conclude that Ms. Kwong's claim is "probably true" or "more likely than not." By demanding more, USCIS unlawfully elevated the burden of proof.

### IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Accept jurisdiction and maintain continuing jurisdiction of this action;

2. Declare the USCIS decision of March 4, 2026 denying Ms. Kwong's Form I-129 petition unlawful, arbitrary, capricious, an abuse of discretion, and not in accordance with law, and set it aside pursuant to 5 U.S.C. § 706(2);

3. Declare USCIS's interpretation that ITF Women's World Tennis Tour competitions categorically fail to constitute "competitions at an internationally recognized level of performance" to be ultra vires and contrary to law;

4. Remand this matter to USCIS with instructions to approve Ms. Kwong's Form I-129 petition;

5. Issue a preliminary and permanent injunction pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling Defendants to approve Plaintiff's Form I-129;

6. Award Plaintiff attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

7. Grant such other and further relief as the Court deems just and proper.

Dated: April 22, 2026

/s/ Nadine Navarro
Navarro Immigration Law Firm
2332 Galiano Street, 2nd Floor
Coral Gables, FL 33134
Phone: (786) 734-1671
Email: nadine@navarroimmigration.com
*Pro Hac Vice Counsel for Plaintiff*

/s/ Dan Berger
Green & Spiegel
1524 Delancey Street
4th Floor
Philadelphia, PA 19102
Phone: (215) 395-8959
Email: dberger@gands-us.com
*Local Counsel for Plaintiff*